Thank you. Thank you. Good morning, Your Honor. So may it please the court. Toby Marshall on behalf of the appellants. Rule 23 B2 was designed for civil rights cases like this one, and the district court below abused its discretion in denying class certification. The court's decision is rooted in several overlapping errors and I'll start with the one that is most important, which is that the district court looked into the merits and ruled on the merits of plaintiffs claims. We see this in the record at pages 11 through 13, where the district court held that plaintiffs failed to prove the policies and the practices that they allege. That conclusion was legally erroneous because it's not plaintiff's burden at this stage of the case to prove the conduct alleged. But wasn't he taught in context? I really puzzled over this as I went through the order. Wasn't he talking about the plaintiff's failure to prove the existence of? Yes, but I think that the failure to prove the existence is essentially coming to the conclusion that we failed to demonstrate that these this course of conduct is occurring. Well, so there's two to the extent we're talking about a facial challenge. The existence of is just a written policy. Right. Two written policies. Right. Okay. And then if you set that aside for a minute, then when we talk about your as applied challenge, I think in context, the judge found that your team didn't prove the existence of the practices that you alleged. Correct. Do you think that he meant that the district court meant you didn't prove the existence of a common practice? In other words, that the declarants didn't describe it the same way or what is he getting at there? Well, I think he is asserting that we did not prove the existence of the practices that we allege. So, for example, we allege that the defendants engage in a course of conduct of failing to provide meaningful notice before conducting the sweeps. And some of the declarants receive notice. That was one of the judge's points. That was one of his points on on typicality. That's correct. And I'll address that in a in a moment. But but I do think that when you really look at it and we can see this in particular because we have a court that's ruling not only on class certification, but also on a motion for preliminary injunction, and he uses the same exact language at pages 11 through 13 with respect to class certification that he does at page 24, for example, on a motion for preliminary injunction. Can I ask about the facial challenge to the two procedures? Is there language in those procedures that on its face, not not as applied, but on its face? You're saying it violates the Fourth Amendment or is unconstitutional. Yes. And what is the specific language? Can you point me to. So in other words, there's some language about the the hazardous language allows the city to destroy wet material. But that's not actually in the policy document itself. Yeah, there's there's a brief reference to wet bedding material. But but I think the one that we're focused on primarily with respect to a facial challenge is the obstructions and immediate hazards language. And so this is found at E.R. 855 in FAST 1701, Section 4.1. What about that language is facially problematic as opposed to your as applied challenge? The facial challenge that we're making to that language is that it allows the defendants to conduct these sweeps without any notice whatsoever. If they believe there's an obstruction or a hazard. And we're challenging those as being vague terms that essentially create a risk of erroneous deprivation. So if you look at the. So they're just definitions that they have. The language you're citing on E.R. 855 are just definitions. So you're saying right. Three point three and three point four have. Correct. But four point one is where it becomes operative. So four point one says that if there's an obstruction or an immediate hazard, it goes on to say these parts of these rules do not apply. And for example, the notice requirement doesn't apply. For example, the requirement to segregate personal property from garbage doesn't apply. So. So. Right. And if the if there were no definition of hazard or obstruction. Right. Then you would certainly have a facial challenge problem because there'd be a real risk of arbitrary enforcement. Right. But you also. So. But are you challenging the definition of hazard and obstruction? We are. You're on. That's what I need help with. We're challenging those as being overbroad, as being vague, as basically we've put forward, for example. Even with the defined terms, there's still too much of a risk of arbitrary enforcement. Is that it? Yes. Because the person, the enforcer on the ground is going to get. We'll have too much discretion to determine what is an obstruction or what is a hazard. Because the terms are defined in such a way that the vast majority of public property in Seattle falls within this. And therefore, that's different. That's different. You argue that in your brief, that 80 percent of these encampments are in those zones. I'll call them zones for a minute. But but I'm trying to get it here. And I think Judge Dakota is as well. What is your facial challenge? And the facial challenge seems to be centered on obstruction and hazard. Not that they're undefined terms, but that the definition still leave too much discretion. I'm not trying to put your words in your mouth. I am struggling to understand your argument. Yes. The terms are defined so broadly that they do leave too much discretion. OK. And then do you have a separate argument that has to do with a facial challenge? Because there's facially invalid somehow because that the definition sweep in too much territory. Is that what you're saying? Is that a separate argument? And if so, I need help understanding it. I think, to be completely frank, the the better argument here is the as applied challenge. We have brought a facial challenge, but but really the focus of this case is on a course of conduct in which the defendants conduct these sweeps without warrants. They conduct the sweeps, we allege, without meaningful notice and without meaningful due process. Before you leave facial challenges, I see where the judge said under the preliminary injunction part of the order that there's not a likelihood of success on the merits for the facial challenges. In the other part of the order that discussed the certification of a class, did the judge ever rule on your facial challenge? No. Basically, what the judge held, the judge, I don't believe, addressed the facial challenge in the classification. OK, I couldn't see it either, but that was now you wanted to go to as applied. So don't let me get in your way. Go ahead. Yes. And that's because that's really what the court focused on. And so the court did say that we failed to prove the existence of the practices alleged. And our position is that that violates longstanding precedent from this court that says that the court is not to get into the merits. And I'll give a few examples in the Jimenez versus Allstate case. I thought Duke could be Walmart. The court said that it was not the courts were not precluded from looking at the merits, that they could they could review the merits and considering the correctness of class certification. That is correct only to the extent that the merits are intertwined with the elements. And so a good example was set forth in the Amgen case where essentially in a securities fraud case, if the plaintiff is attempting to rely on a fraud on the market theory as a way of avoiding individualized issues and to get a presumption of reliance, then there are certain elements of the merits, not all the merits, but certain elements that the plaintiff has to demonstrate at the class certification stage. The plaintiff has to show there's an efficient market, for example, and the plaintiff has to show that the challenged statements were publicly made. That's a very good example of where the merits intertwine with the elements of Rule 23 because you can't determine whether the common questions predominate over individualized issues if you don't know that there's going to be a presumption of reliance. But here they have to show, the plaintiffs have to show a potentially viable claim. So they have to show the elements of their Fourth Amendment or Fourteenth Amendment claims, right? I thought that was what the district court had a concern that the class didn't have a, all members of the class didn't have a potentially viable claim. Right, and there's several problems with that. So first of all, the court didn't focus on the elements of the claim. So let's take the Fourteenth Amendment, for example. Under Matthews, you look first at the plaintiff's interest. That's going to be a common question and one that this court has already answered. The court in Levin said that the plaintiffs have a very serious and most basic interest in the right to keep the possessions of their personal property. You then look secondly at the risk of erroneous deprivation. That, again, turns on the defendant's course of conduct, which is going to be the same here. We have to keep in mind this is a B-2 case in which we are challenging conduct that we allege is generally applicable to the class. Like Parsons. Yes, like Parsons, for example. And to get to your question about the court saying that we haven't proven that all of the class members were injured, that, too, is an error of law. So you can look at several sources to determine that, but first you've got the advisory committee notes to the 1966 amendment. But what's the potentially viable claim if, in fact, the members of the class were not subject to these practices? I mean, just very simply, that seems to be the district court said there was not evidence that members of the class were subject to these practices, therefore no potentially viable claim. So what is it? So let me start off by just at, like, the basic level. The very first level, if you look at page 854, we've got a set of policies and procedures here that the defendants themselves said were enacted to create uniform policies and rules and procedures. They can do that? They can do that? Right. Right. And my point is that we've got a uniform set of rules and procedures that apply generally to a group of people that's well-defined. Well, that's like Parsons, and I think that's why Parsons is really a helpful analogy, because we don't have to look at commentary. That's our binding case law. So if you could focus on that, that helps me, because the district court's got a problem with finding that each of your representatives has established a viable cause of action. So Parsons, your time's ticking, so I'm going to just quickly. Parsons involves people in a prison setting alleging that there was an inadequate health care system. That is a gross oversimplification. Right. But when we talk about certifying the class, each one of those members, whether they got prisoners, whether they needed health care yet or not, whether they were sick or not, they were still subject to what they alleged was an inadequate system for purposes of class certification. We weren't making a determination about whether it was adequate or not. And that, of course, was for Eighth Amendment purposes, not for Fourth and Fourteenth. And you rely on Parsons heavily, and it is an Eighth Amendment case. So I'm trying to figure out how you superimpose that in this circumstance. You have a uniform policy, and you have a bunch of people, citizens living in encampments. Right. And they have property rights. So how do you rely on Parsons to get past the district court's problem, which is some of those folks didn't allege that they had had inadequate notice, for example, of an action to clear a camp? Because we're not, for several reasons, we're not challenging past conduct, for example. So this is not a case in which we're seeking damages. So the fact that notice may have been provided correctly once doesn't negate our allegation that notice is regularly not provided in a meaningful way. Right. And I appreciate you're only looking for injunctive relief. Right. But you need to get to the district court's problem, which is if these folks haven't. You need a class representative that can bring this claim, right? We do. And so the district court's conclusion that these plaintiffs, for example, failed to meet the typicality requirement because they admitted that they had seen a notice in the past is an erroneous ruling. Because, first of all, it doesn't, they didn't testify that the notice was constitutional. Second, they testified to other instances in which notice was not provided. Third, they're challenging a course of conduct that's forward-looking. This is about a. . . But there has to be evidence of a course of conduct. That's what the court didn't find. You may have individual declarations that the people, individuals didn't get notice, but the court didn't find the evidence of a pattern in practice, longstanding pattern in practice. That could be challenged going forward. And that's erroneous because that's a merits determination. The question of whether the alleged. . . I'm sorry. The question. . . Go ahead. The question of whether the alleged pattern or practice exists is a question of fact that is to be decided at summary judgment or at trial. This court held that in Jimenez v. Allstate. It held that in Alcantara v. Hobart Services. It's held this numerous times where it has said that, and this regularly happens at Class Cert. Plaintiff comes forward and says the defendant's engaged in this pattern of practice of conduct. The defendant comes forward and says, no, I'm not. When a district court rules on those merits, that's legal error. The court is supposed to look at whether the challenged conduct, if true, if it can be proven at trial, is going to give rise to common questions, and that's. . . What is the conduct that you're talking about? It's very broad, I think, in terms of the different types of conduct that you're trying to include in that. It is. And so, first of all, at one level, it's simply conducting the sweeps without a warrant. At another level, it's engaging in this pattern and practice of conducting sweeps without meaningful notice and meaningful process in order to recover the property that's been seized or to challenge the destruction of the property that's been seized. And I'm going to reserve the remainder of my time. You have a few seconds left, yes. Good morning. May it please the Court. My name is Matt Siegel from Pacific Law Group here on behalf of the City of Seattle. With me at council table is my partner, Taki Flavaris, and also Alicia Young from the Attorney General's Office, who will argue on behalf of the State Department of Transportation for the last five minutes of our argument. Okay, please watch your time. Yes, I will. Thank you very much, Your Honor. The assertion made by Appellants' Counsel was that the district court made several overlapping errors, and the appellant's burden here would be to show that each one of those amounted to an abusive discretion and that they were all reversible error in order to remand this back for further consideration. I'm having a hard time with the facial challenge. Did the district court ever rule on it? Well, Your Honor, what the district court ---- Class certification part of the order? My understanding is that, first of all, to answer that question, you need to look at what questions were actually presented for class certification below. That is critical. Counsel, I'm just asking whether the court ever ruled on the facial challenge. I don't believe there was a facial challenge articulated for purposes of class certification. First of all, if you look at ER 12, which quotes ER 1466 and lists these very generic questions that were being presented on class certification, you would see that these were essentially generic queries as to whether or not the city had complied with the law. Okay, so the judge's order clearly acknowledges the existence of facial challenges, and I'm hearing you're saying that he did not rule on those. I believe that he denied across the board facial and as applied based on the questions that were presented to him for certification. Can you point to me where he ruled on the facial challenge? Well, as ---- Class certification part of the order. Sure. I think actually what the court said in the later part of the ruling was there is no facial challenge that's actually been articulated here. And the citation, please? It's in the second part of his order in the preliminary injunction motion, Your Honor. Unlikelihood of success on the merits under the winter factor. So I don't want to take up too much of your time, but I'll just tell you I can't find a ruling on it. Sure. I understand what you're saying. I think what the court said, again, is not that there was an unlikelihood of success on the merits on a facial challenge, so much to say there had not been a facial challenge actually articulated. And we had raised this issue in our briefing here on appeal that there wasn't. And why was there not a facial challenge articulated? Oh, just one counsel. Well, under Salerno, as you point out, Your Honor, what would have had to have happened is there would have been a showing of no set of circumstances based on the on-the-face written policies that were being presented. That's the only way that you would have articulated a facial challenge. And just as you said, the definitions, for example, of obstructions and hazards, which are the only thing that you heard here, that's not a facial challenge under Salerno. That's not a basis to challenge. An oral argument the judge asked counsel. It may not have been used. He said, how is it that we've got a potential class civil rights litigation and they're challenging a written policy and they're going to not have a common question for purposes of 23A? Yes. And I think the city's response was that it wasn't a meritorious challenge. Well, I think the city's, if it was my response, that would have been it wasn't meritorious because that would have been the preliminary injunction, which I was arguing. With respect to the question of 23A, Your Honor, the answer was twofold. One was that the questions did not actually state certifiable common issues. But more importantly, the issue that Judge Acuda raised and that you also alluded to was a lack of significant proof to establish that there were these common questions. And, for example. But when he says the existence of, for the facial challenge, there's no question about the existence of two written policies. Well, they would have to be somehow arguably unlawful or state some sort of a cause of action in order to be certifiable questions, right? And that's the premise. For example, you talked about Parsons, right? Could we get your response to opposing counsel's argument today that the problem on the facial challenge is that there was too great a danger of arbitrary enforcement? Well, there's no evidence in the record that suggests arbitrary enforcement and there's no attempt to satisfy the Salerno standard. There is in the record a substantial volume of evidence demonstrating that these types of emergency situations were regularly carried out with notice, with outreach, with storage of property, with every effort made to provide the greatest amount of protection and that the exceptions to that were legitimate emergency situations. For example, a fire under a structure that was threatening the use of a bridge or tents that were actually in the line of traffic or falling onto a highway, that that's the way that those things were used. So to say there's no set of circumstances where you might have to remove an obstruction or a hazard in that type of scenario, it was completely unsupportable. And to say that you would certify something on its face that other courts have also concluded is more than sufficient, as you said, you can adopt these rules for uniformity. And that's what these other courts like Cobain versus City of Eureka, Acosta versus City of Salinas, and the Hawaii decisions, the Martin case consolidating those, all of them saying these types of procedures are facially valid and usually valid as applied. What the plaintiffs have been arguing this whole time is that this case is more akin to LaVanne versus City of Los Angeles. They're trying to analogize it to a situation where there's no notice and where there is no storage at all and summary destruction of property. I think the strongest or the as-applied challenge that I find most problematic is the allegation that there's a practice of coming in and conducting the sweeps in a way where everything gets wet. Because once it's wet, it doesn't have to be stored and there's no ability for the plaintiff's class members, prospective class members to recover their property. Do you want to speak to that, please? Absolutely, I'd be happy to speak to that. And again, as particularly discussed in the State's brief, that issue was never argued as ground for certification below. It's presented for the first time on appeal. However, the statement that has been repeated both at the trial court and on appeal by the plaintiffs is that the city has a policy of not storing wet items. That is completely contradicted by the record. On the face of the policies under the MDARS, what is articulated is that wet bedding may be considered a hazardous item, right? And that is because, as explained in the declaration of Dr. Cowan, an epidemiologist, and as well as explained by the field coordinators, there's a serious health and safety risk with handling or storing wet bedding. And so particularly, if you want to look at the reasoning behind that, it's at S- I don't need to look at the reasoning behind that. I'm from the Pacific Northwest. But I am really concerned about your response to the as-applied challenge. Sure. And you saw the declaration, so I don't want to use your time, but there were allegations of box cutters being used so that tents were open and everything got wet and that the way that policies are implemented is such that these people don't have an opportunity then to recover their property once it gets wet because it's not stored. Well, let's talk about that. I'm glad you raised that issue in particular, Your Honor. The cutting of the tents, what the district court found appropriately, was that the evidence that was submitted regarding the cutting of tents was evidence that was submitted after property had been relinquished. In other words, after there had been an interaction with a camper or after there had been notice, and at that point in time, that's when these tents were being taken apart. Is this essentially abandoned property? Is that your position? Well, at that point in time, after notice and an opportunity to be heard, whether it's literally abandoned, as that word of art would be, or whether it is simply satisfied constitutional requirements by having notice and an opportunity to be heard, either way, it's not what's being alleged, which is summarily destroying property without notice. But what the district court concluded appropriately – Wait a minute. This is different. I'm not talking about notice. Sure. I'm assuming that there was notice, and the problem of the as-applied challenge I'm trying to get you to focus on is even if I know there's going to be notice, right, if I understand that pursuant to the written policy that my property is going to be stored, that's quite different than the situation would be if I had notice and somebody comes in with a box cutter and conducts a search and a sweep in a way that everything gets wet and then my stuff isn't stored. So I'm trying to get you to focus on that. Well, the question is, first of all, was there a request for it to be stored? In many, many instances there is not. Was the property abandoned? As you suggest, in many instances it is. In virtually every instance – Does it need to be a request to have the property stored? Well – What if I'm not home? Well, that's the purpose of the notice, right? The purpose of the written notice is to comply with the constitutional requirement to give an opportunity to either remove the property on your own, to remove the property with assistance from the city, or to have the property stored. Counsel, this is difficult for me because you keep not answering my question. Okay. Does the written policy require that I request that my property be stored? The property – it does so de facto in the sense that if you allow the notice period to expire without taking any action, then at that point in time the field coordinator will sort the property that is still remaining on the site at the time of the cleanup and they will make a determination as to what can and cannot be safely stored with a strong presumption in favor of trying to store everything that they can. But if it has been left on that property after the notice period has expired, there may be some property that is not stored. That's correct, Your Honor. Thank you. But what the district court concluded in this situation is that there had not been a determination of a sufficient policy or practice, illegal policy or practice, that was certifiable under Dukes, under Ellis v. Costco, and the requirement that there not only be some showing of prospective harm, as was discussed in Parsons, but that this was an actual systemic policy that was causing the harm. And you have to make that determination. Ellis in particular emphasizes, contrary to the statement about the merits here, that you must get into the merits to determine whether or not there is a common policy or practice. You certainly have to do that when you're talking about municipal liability under Monell. Well, I don't think of that as a merits determination. So in Parsons, they didn't have to decide whether or not the medical care was inadequate. Completely agree. Just the existence of the system. That's correct, Your Honor. And there they demonstrated, I believe, ten unquestioned statewide policies that were at issue and seven that were at issue with respect to a subclass. There was no dispute about that. In a footnote, in fact, Judge Reinhart commented, the proof here is so robust we don't even have to decide if the Dukes standard applies. We don't have that situation here. We have the opposite of that. And what this Court said in Ellis was the district court was required to resolve any factual disputes necessary to determine whether there was a common pattern in practice that could affect the class as a whole. That was the requirement. That's the obligation. That's drawn from Dukes. That's a post-Dukes decision. And so what does that mean? It means showing significant proof, not simply of isolated incidents, not simply of persons who may lose property, even though there's not a constitutional violation associated with that. And that's a further distinction from Parsons. Parsons being an Eighth Amendment claim, the Court looked at the cause of action and the elements and said on a prospective Eighth Amendment deliberate indifference claim, you have to look at the future harm issue. That is one of the causes of that. That's one of the parts of the cause of action. We don't have that issue here. We have generic statements about reasonableness of property being lost or the notice and opportunity to be heard. Again, both of those in a highly contextual situation. I think the State is getting nervous. Yes. And I'm going to sit down now, Your Honor, unless the Court has any further questions for me. Thank you. We ask that you find that there was no abuse of discretion and affirm. Thank you. Good morning. May it please the Court. Alicia Young. I'm here on behalf of the State Department of Transportation appellees. And it's important for the Court to focus here on what was exactly in front of the district court when it denied class certification. And as Judge Martinez noted in his decision, plaintiffs didn't even try at that point to demonstrate the existence of the policies and practices they alleged. The motion itself did not cite to any evidence of abuse of discretion. And it was full of conclusory allegations. Even the materials eventually pointed to on reply didn't tend to show whether the practices that they were alleging were occurring and actually existed. And so we believe Judge Martinez's decision was well within his discretion to deny class certification. What does that mean? What does it mean when you said that they didn't allege that the policies that were actually occurring really existed? What does that mean? It means that the evidence that they eventually did point to wasn't probative. So, for example, the policy of – Here's my first disconnect. You said they didn't even try. And now you're saying the evidence they did point to. So they pointed to some evidence. In the reply. And you found it lacking. I don't know what you mean. I'm really trying to struggle with reconciling your statements. What I'm referencing, Your Honor, is that Judge Martinez found in his decision that just because the plaintiffs showed property destruction didn't mean that it showed property destruction without notice beforehand or without procedure for preserving the property. So the out-of-context videos and photographs, which were actually refuted with deposition transcripts, where the person that took that video had no idea at what point in the process it occurred, and it was rebutted by testimony by the city that showed that there had actually been quite a bit of process and notice beforehand. So how do I reconcile that with your first statement where you said they didn't even try? Aren't you really just finding their evidence was lacking? Well, the motion itself did not even try, Your Honor. The motion for class certification that was filed, which was the only motion that the defendants had a chance to respond to, cited to no evidence at all. Now you're making a distinction, I think, about what they put in the motion and what they put in the reply. Correct. Is that it?  That's helpful to me. Yes. I apologize. That's all right. So in addition to the problems with commonality, we have issues with the ability under B-2 for one injunction to address all of the injuries that plaintiffs are claiming apply to the class. The plaintiffs have to give content to what it would mean to provide adequate notice and property storage so that the court can at least conceive of one injunction that would address all their claims. Here, this case isn't about minimum standards. There are robust standards already in place that require notice and process. So this isn't a case like Lyle or some of the other cases where the allegation was there that was essentially no process or Levan where it was immediate property destruction. So when the plaintiff's actual claim in this case requires individual consideration of facts and circumstances, and those facts and circumstances are critical to analyzing whether or not the 4th or the 14th Amendment is violated, and they're critical to allowing on the ground the state and the Department of Transportation specifically to protect public safety and protect public infrastructure, the individual facts and circumstances must be taken into account. We ask this court to affirm. I think you have a few seconds. We'll give you a minute. Thank you very much, Your Honor. I'm going to try and make three quick points. In just a couple months ago in Solly v. Corona Regional, this court reaffirmed the longstanding rule that plaintiffs simply need to come forward with material that is sufficient to form a reasonable judgment as to the elements of Rule 23, not the merits of the case. Here the district court held that the practices were not proven because the evidence offered failed in the court's opinion to provide enough context for the court to determine what was going on. That is precisely the error that this court held was erroneous and required reversal of a denial of class certification in Stockwell v. San Francisco. As to the injury to all class members, I would ask this court to take a look at the advisory committee note, which says that not every class member has to be harmed in a B-2 case in order for the case to go forward. I would also ask the court to take a look at Parsons' footnote 33, which says not every class member need be aggrieved. Finally, the arguments that my friends are making go to the merits. There's no question here that the defendants engage in a common course of conduct that applies generally to all the class members, and we are asking for injunctive relief that would not be divisible among the class but would be indivisible. One form of injunctive relief for all. Thank you very much. Okay. The case of Caleb Willis v. City of Seattle is submitted, and we'll now hear argument in Washington Potato Company v. J.R. Simplot Company.
judges: Ikuta, Christen, Choe-Groves